UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| KATHRYN W., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS** <br><br><br> Case No. 2:22-cv-00170 <br><br> Magistrate Judge Daphne A. Oberg |

Plaintiff Kathryn W.[1] filed this action for judicial review[2] of the Acting Commissioner of the Social Security Administration's ("Commissioner") decision denying her applications for child's insurance benefits, period of disability, and disability insurance benefits under Title II of the Social Security Act[3] and supplemental security income under Title XVI of the Social Security Act.[4] The Administrative Law Judge ("ALJ") denied Ms. W.'s applications, finding she did not qualify as disabled.[5] Ms. W. argues the ALJ erred by failing to properly account for her obesity in denying her Title II claims.[6]

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including social security cases, the court refers to Plaintiff by her first name and last initial only.

[2] (*See* Compl., Doc. No. 2; Opening Br., Doc. No. 18.)

[3] 42 U.S.C. §§ 401–434.

[4] *Id.* §§ 1381–1385.

[5] (Certified Tr. of Admin. R. ("Tr.") 15–29, Doc. Nos. 13–14.)

[6] (Opening Br. 5–7, Doc. No. 18.)

1

The court[7] has carefully reviewed the record and the parties' briefs.[8]  Because the ALJ properly considered Ms. W.'s obesity and his findings are supported by substantial evidence, the Commissioner's decision is affirmed.

## STANDARD OF REVIEW

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of a final decision of the Commissioner.  This court reviews the ALJ's decision and the whole record to determine if substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards.[9]  "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principals have been followed is grounds for reversal."[10]

"[A]n ALJ's factual findings . . . shall be conclusive if supported by substantial evidence."[11]  Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[12]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[13]  "The possibility of

---

[7] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  (Doc. No. 10.)

[8] The appeal is determined on the written memoranda, as oral argument is unnecessary. *See* DUCivR 7-1(g).

[9] 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[10] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

[11] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, ___ U.S. ___ (2019) (internal quotation marks omitted).

[12] *Id.* at 1154 (internal quotation marks omitted).

[13] *Id.* (internal quotation marks omitted).

drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[14] The court may not substitute its judgment for that of the ALJ nor may it reweigh the evidence.[15]

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months."[16] Under the Social Security Act, an individual is considered disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[17]

In determining whether a claimant qualifies as disabled within the meaning of the Social Security Act, the ALJ uses a five-step sequential evaluation. The analysis requires the ALJ to consider whether:

1) The claimant is engaged in substantial gainful activity;
2) The claimant has a severe medically determinable physical or mental impairment;
3) The impairment is equivalent to one of the impairments which precludes substantial gainful activity, listed in the appendix of the relevant disability regulation;

---

[14] *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

[15] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[16] 42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A).

[17] *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

    4) The claimant has a residual functional capacity to perform past relevant work; and

    5) The claimant has a residual functional capacity to perform other work in the national economy considering his/her/their age, education, and work experience.[18]

The claimant has the burden, in the first four steps, of establishing the disability.[19] At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work existing in the national economy.[20]

For a period of disability and disability insurance benefits claim under Title II, the claimant must show disability on or before the claimant's date last insured.[21] For a child's disability benefits claim under Title II, the claimant must show disability which began before the claimant attained age twenty-two.[22] And for a supplemental security income claim under Title XVI, the claimant must show disability after the date the application was protectively filed.[23]

---

[18] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

[19] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[20] *Id.*

[21] *See* Soc. Sec. Ruling 83-10, 1983 SSR LEXIS 30, at *20 ("Under [T]itle II, a period of disability cannot begin after a worker's disability insured status has expired.").

[22] *See* 20 C.F.R. § 404.350(a)(5); *see also* 42 U.S.C. § 402(d). As relevant to Ms. W.'s claim, a claimant may receive child's disability benefits on the earnings record of an insured person if, among other requirements, the claimant is a child of the insured person, a dependent of the insured person, at least eighteen years old, and has a disability which began before attaining age twenty-two. *See* 20 C.F.R. § 404.350(a).

[23] *See id.* § 416.335.

## PROCEDURAL HISTORY

On July 2, 2019, Ms. W. applied for a period of disability and disability insurance benefits under Title II and supplemental security income under Title XVI.[24] Later that year, Ms. W. filed applications for child's insurance benefits on her parents' earnings records under Title II.[25] For all applications, she alleged disability beginning on June 15, 2012, when she was twenty years old.[26] As relevant to the claim for a period of disability and disability insurance benefits, Ms. W.'s date last insured was September 30, 2013.[27] As relevant to the child's insurance benefits claims, Ms. W. turned twenty-two on March 23, 2014.[28]

After an administrative hearing,[29] the ALJ issued a decision on June 7, 2021, finding Ms. W. not disabled during the relevant time periods and denying her claims.[30] The ALJ made separate findings for two time periods: (1) the period before Ms. W.'s date last insured and before she turned twenty-two (as relevant to her Title II claims), and (2) the period after she filed her Title XVI claim.[31]

---

[24] (*See* Tr. 15, 294.)

[25] (*See id.* at 15, 302.)

[26] (*See id.* at 15, 27, 350.)

[27] (*See id.* at 16.)

[28] (*See id.* at 350.)

[29] (*See id.* at 36–69.)

[30] (*Id.* at 15–29.)

[31] (*Id.* at 18, 20–27.)

At step two, for the period relevant to Ms. W.'s Title II claims (June 15, 2012, to March 23, 2014),[32] the ALJ found Ms. W. had the following severe impairments: "major depressive disorder, unspecified personality disorder, agoraphobia, bipolar disorder II, anxiety disorder/panic disorder[] with symptoms of obsessive compulsive disorder, post-traumatic stress disorder, and obesity."[33] For the period after Ms. W.'s Title XVI filing date (July 2, 2019), the ALJ found Ms. W. "had the additional severe impairments of type II diabetes mellitus, sequela of a slip and fall, including a concussion (and subsequent post-concussion syndrome) and chronic neck and shoulder pain, and asthma."[34] At step three, the ALJ found Ms. W.'s impairments did not meet or medically equal an impairment listing during any period.[35]

At step four, for the period relevant to Ms. W.'s Title II claims, the ALJ found Ms. W. had the residual functional capacity (RFC) to perform "a full range of work at all exertional levels but with the following nonexertional limitations: she could understand, remember and carry out simple and detailed[] but uninvolved instructions; she could have no more than occasional changes in a routine work setting; and she could have no more than occasional public contact."[36] In other words, the ALJ included no exertional limitations in Ms. W.'s RFC for this period. For the period after Ms. W.'s Title XVI filing date, the ALJ found Ms. W. had the RFC

---

[32] The period relevant to Ms. W.'s disability insurance benefit claim was June 15, 2012, to September 30, 2013, her date last insured. The period relevant to Ms. W.'s child's insurance benefits claim was June 15, 2012, to March 23, 2014, when she turned twenty-two. The ALJ analyzed these overlapping periods together.

[33] (*Id.* at 18.)

[34] (*Id.*)

[35] (*Id.* at 18–20.)

[36] (*Id.* at 20.)

6

to perform only "light work" with certain listed exceptions.[37] Based on these RFCs, the ALJ found Ms. W. unable to perform past relevant work during all relevant time periods.[38] But at step five, the ALJ found Ms. W. capable of performing other jobs existing in significant numbers in the national economy during all relevant time periods.[39] Therefore, the ALJ found Ms. W. was not disabled during all relevant periods and denied her claims.[40]

The Appeals Council denied Ms. W.'s request for review,[41] making the ALJ's decision final for purposes of judicial review.

## DISCUSSION

Ms. W. raises a single claim of error: she argues the ALJ failed to properly account for her obesity in his RFC findings for the period relevant to her Title II claims.[42] Because the ALJ found obesity to be a severe impairment during this period, Ms. W. argues the ALJ erred by not including limitations related to her obesity in her RFC for this period.[43]

A claimant's RFC is the most the claimant can do in a work setting considering his/her/their limitations.[44] In assessing RFC, the ALJ considers all medically determinable impairments, both severe and nonsevere, and all relevant medical and other evidence in the

---

[37] (*Id.* at 23.)

[38] (*Id.* at 27.)

[39] (*Id.* at 27–28.)

[40] (*Id.* at 28–29.)

[41] (*Id.* at 1–3.)

[42] (Opening Br. 5–7, Doc. No. 18.)

[43] (*Id.*)

[44] *See* 20 C.F.R. § 404.1545(a)(1).

record.[45] The ALJ "must consider the limiting effects of obesity when assessing a person's RFC," and must explain how the ALJ reached a conclusion regarding "whether obesity causes any limitations."[46]

The record shows the ALJ considered Ms. W.'s obesity in assessing her RFC. For the period relevant to Ms. W.'s Title II claims (June 15, 2012, to March 23, 2014), the ALJ found Ms. W. was able to work at all exertional levels with only nonexertional limitations.[47] The ALJ expressly addressed Ms. W.'s obesity in his analysis of her RFC during this period. The ALJ noted "the evidence showed her to have a Body Mass Index in excess of 30."[48] But he found Ms. W.'s "obesity was generally mild and there is no medical evidence during the relevant period indicating that her obesity resulted in greater limitations" than the assessed RFC.[49] Thus, the record demonstrates the ALJ considered Ms. W.'s obesity as required and explained his conclusion that it did not cause limitations.

Further, the ALJ's finding that Ms. W.'s obesity did not result in RFC limitations is supported by substantial evidence. Ms. W. has identified no evidence in the record suggesting her obesity caused any functional limitations during the relevant period. Notably, even after the Commissioner's answer brief pointed out this deficiency,[50] Ms. W. failed to remedy it—she did not file a reply brief. Consistent with the ALJ's findings, a review of the medical record reveals

---

[45] *Id.* § 404.1545(a)(2)–(3).

[46] Soc. Sec. Ruling 19-2p, 2019 SSR LEXIS 2, at *12.

[47] (Tr. 20.)

[48] (*Id.* at 22.)

[49] (*Id.*)

[50] (*See* Answer Br. 9, Doc. No. 19.)

8

no mention of limitations related to obesity during the period relevant to Ms. W.'s Title II claims.  Accordingly, substantial evidence supports the ALJ's conclusion that Ms. W.'s obesity did not cause functional limitations during this period.

Contrary to Ms. W.'s argument, the ALJ was not required to include obesity-related limitations in Ms. W.'s RFC merely because he found obesity to be a severe impairment at step two.  Because the agency defines a nonsevere impairment as one which "does not significantly limit [the claimant's] physical or mental ability to do basic work activities,"[51] Ms. W. argues the ALJ's step-two finding of severity means the ALJ necessarily determined Ms. W.'s obesity caused work-related limitations.  However, the Tenth Circuit has explained a finding of severe impairments at step two "does not require the ALJ to find . . . that the claimant did not have the residual functional capacity to do any work."[52]  "After finding severe impairments, the ALJ still has the task of determining the extent to which those impairments . . . restricted [the claimant's] ability to work."[53]  Thus, the ALJ's step-two finding that obesity was a severe impairment did not mandate the inclusion of obesity-related limitations in her RFC.

Indeed, the Tenth Circuit has rejected arguments similar to Ms. W.'s in other cases.  In *Smith v. Colvin*,[54] the claimant argued the ALJ failed to properly consider the effects of her obesity in formulating her RFC, after finding it to be a severe impairment.[55]  The Tenth Circuit

---

[51] 20 C.F.R. § 404.1522(a); *see also* Soc. Sec. Ruling 16-3p, 2016 SSR LEXIS 4, at *29 ("A severe impairment is one that affects an individual's ability to perform basic work-related activities.").

[52] *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007).

[53] *Id.*

[54] 625 F. App'x 896 (10th Cir. 2015) (unpublished).

[55] *Id.* at 899.

rejected this argument where the claimant failed to "show[] that her obesity alone, or in combination with other impairments, resulted in any further limitations."[56] Similarly, in *Razo v. Colvin*,[57] the Tenth Circuit rejected the claimant's argument that the ALJ failed to consider his obesity in formulating the RFC, where the ALJ discussed obesity in assessing the RFC and the claimant did not "cite to medical or other evidence to support his claim that his obesity was disabling."[58]

In sum, the ALJ properly considered Ms. W.'s obesity and explained his conclusion that it did not cause RFC limitations. And the ALJ's findings are supported by substantial evidence, where the record contains no evidence of functional limitations resulting from obesity during the period relevant to Ms. W.'s Title II claims. Therefore, the ALJ did not err in assessing no obesity-related limitations in Ms. W.'s RFC for this period.

## CONCLUSION

The court AFFIRMS the Commissioner's decision.

DATED this 24th day of February, 2023.

BY THE COURT:

_____
Daphne A. Oberg
United States Magistrate Judge

---

[56] *Id.*

[57] 663 F. App'x 710 (10th Cir. 2016) (unpublished).

[58] *Id.* at 716.